UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HARRY WILLIAM LOTT,

      Plaintiff,

                                  Case No. 2:12-cv-608

  v.                          JUDGE GREGORY L. FROST

                                  Magistrate Judge Terence P. Kemp

HAVAR, INC., et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) Defendants' motion to strike (ECF No. 57);

(2) Plaintiff's motion for summary judgment (ECF No. 63), Plaintiff's memorandum in support (ECF No. 65), Defendants' memorandum in opposition (ECF No. 68), and Plaintiff's reply memorandum (ECF No. 72);

(3) Defendants' motion for summary judgment (ECF No. 70),

(4) Plaintiff's March 25, 2013 motion *in limine* (ECF No. 74) and Defendants' memorandum in opposition (ECF No. 79);

(5) Plaintiff's April 1, 2013 motion for sanctions (ECF No. 80) and Defendants' memorandum in opposition (ECF No. 81);

(6) Plaintiff's May 10, 2013 filings titled "GAG ORDER" (ECF No. 83) and "SLAPP" (ECF No. 84) and Defendants' combined response (ECF No. 85);

(7) Plaintiff's May 14, 2013 motion *in limine* (ECF No. 86);

(8) Plaintiff's May 20, 2013 motion *in limine* (ECF No. 88),

(9) Plaintiff's May 24, 2013 motion *in limine* (ECF No. 91) and Defendants' memorandum in opposition (ECF No. 94); and

(10) Plaintiff's May 28, 2013 motions *in limine* (ECF Nos. 92, 93) and Defendants' combined memorandum in opposition (ECF No. 95).

For the reasons that follow, the Court **DENIES** the motion to strike (ECF No. 57), Plaintiff's motion for summary judgment (ECF No. 63), and Plaintiff's motion for sanctions (ECF No. 80). This Court **GRANTS** Defendants' motion for summary judgment (ECF No. 70) in regard to Plaintiff's federal claims and declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which the Court dismisses without prejudice. The Court **DENIES** the remaining motions as **MOOT**. (ECF Nos. 74, 83, 84, 86, 88, 91, 92, 93.)

## I. Background

Havar, Inc. is a non-profit corporation that provides services and assistance to developmentally disabled individuals, including operating group homes. One of these homes is known as Tupper House and is located in Washington County, Ohio. At time of the events relevant to this litigation, Tupper House provided services to developmentally disabled boys.

Plaintiff, Harry William Lott, was previously employed at Tupper House as a Resident Assistant beginning on July 1, 2010. As an employee, Plaintiff underwent training on Havar, Inc.'s sexual harassment and whistleblower policies. Such training did not inform Plaintiff's time as a Tupper House employee as Havar, Inc. likely wished, for Plaintiff's employment was marked by numerous incidents.

In May 2011, Havar, Inc. management learned that Plaintiff had given a female coworker a massage during their shift at Tupper House. Because management was purportedly concerned

about this conduct in light of Havar, Inc.'s sexual harassment policy, the group home Program Director, Barbara Mugrage, met with Plaintiff about the incident. Additional sexual harassment training occurred in early July 2011. This took place according to Havar, Inc.'s Executive Director, Debbie Schmieding, because management had concerns about Plaintiff's conduct. Despite this training, management received additional reports of alleged misconduct by Plaintiff.

In September 2011, for example, Plaintiff purportedly jumped onto a coworker's car and tried to reach into the car through an opening the window while two coworkers sat inside. Mugrage attempted to meet with Plaintiff to discuss this incident, but he refused to meet with her.

In November 2011, management received reports from three different employees that Plaintiff was engaging in harassing behavior, with much of his conduct directed toward a coworker, Amanda Metts. During the course of an investigation, Metts informed management that Plaintiff had jumped on top of her while at work, poking and tickling her; that Plaintiff had grabbed Metts' breast; that he had made sexually oriented comments to her; that Plaintiff had rubbed up against Metts; that he had asked coworkers to date him; and that Plaintiff had boasted that Havar, Inc. could not "touch" him because he has powerful lawyers.

Toward the end of the month, Schmieding sent Plaintiff a letter informing him that he had been suspended pending a decision by Havar, Inc.'s Personnel Committee on whether to accept management's recommendation that Plaintiff's employment be terminated. In December 2011, the Personnel Committee met and accepted the termination recommendation, and Plaintiff subsequently lost his job.

Following his termination, Plaintiff alleged that he was a whistleblower and that he had

3

been sexually harassed while at Tupper House. Plaintiff asserts that he had filed a complaint related to alleged insurance fraud with the Ohio Department of Insurance. He also filed a charge with the Ohio Civil Rights Commission in which he complained of sexual harassment. Eventually, Plaintiff filed this litigation. In his most recent amended complaint, Plaintiff asserts twelve counts: (1) negligence; (2) "vicarious liability"; (3) retaliation; (4) assault and battery; (5) negligence per se; (6) mental suffering; (7) defamation; (8) sexual harassment; (9) "failure to act"; (10) libel; (11) breach of contract; and (12) infliction of mental distress. (ECF No. 59, at PAGEID # 204-07.) Both Plaintiff and Defendants have filed motions for summary judgment, which are ripe for disposition. (ECF Nos. 63, 70.) In addition, Defendants have filed a motion to strike (ECF No. 57) and Plaintiff has filed nine other motions, all of which are also ripe for disposition (ECF Nos. 74, 80, 83, 84, 86, 88, 91, 92, 93).

## II. Motion to strike

On December 3, 2012, Plaintiff filed a third amended complaint. (ECF No. 53.) That document lacked Plaintiff's signature. (*Id.* at PAGEID # 190.) Consequently, Defendants filed a motion to strike the third amended complaint, citing the lack of a signature and the fact that Plaintiff had altered content in the pleading in apparent contravention of a prior Order by the Magistrate Judge. (ECF No. 57.) The Magistrate Judge then issued a December 6, 2012 Order in which he gave Plaintiff seven days in which to file a signed copy of the amended pleading. (ECF No. 58.) Plaintiff filed a signed version of the amended complaint on December 11, 2012. (ECF No. 59.)

Plaintiff's signature mooted one of the two grounds upon which Defendants based their motion to strike. Their second ground, that the amended complaint violated a prior Order

prohibiting substantive changes in the pleading, was not expressly discussed in the Magistrate Judge's December 6, 2012 Order. This second ground does not provide a basis for striking the signed amended complaint.

The Magistrate Judge's November 5, 2012 Order did not permit substantive changes in an amended complaint (ECF No. 47), but his December 3, 2012 Order did not include such a prohibition (ECF No. 51). Additionally, the Magistrate Judge's December 6, 2012 Order required only that Plaintiff sign the amended complaint containing the altered date about which Defendants complain; that Order did not address, much less prohibit, the change in content. (ECF No. 58.) The Court concludes that even if Plaintiff got away with changing his pleading, it would be unfair to strike the offending document now in light of the other more recent Orders that at least appeared to allow implicitly the changes he made. Moreover, given that the prejudice to which Defendants point is that the substantive change informs the statute of limitations for the assault and battery claims over which this Court declines to exercise supplemental jurisdiction, the pleading changes are ultimately immaterial here.

This Court **DENIES** the motion to strike. (ECF No. 57.)

### III.  Motion for sanctions

Similar to most of his filings, Plaintiff's motion for sanctions is convoluted and at times largely incomprehensible. It appears that Plaintiff targets the sufficiency of discovery responses he received and that he threatens to file a separate action against Defendants' counsel. (ECF No. 80.) Plaintiff also asks in his motion that this Court enter summary judgment on his Count Nine claim for "failure to act."

Defendants respond by noting that by neglecting to contact their counsel on these issues

prior to filing for sanctions, Plaintiff has failed to comply with the procedural requirements of Federal Rule of Civil Procedure 37 and with Local Civil Rule 37.1.  Defendants also assert that they have cooperated fully and in good faith in the discovery process; they point to the Magistrate Judge's denial of Plaintiff's related motion to compel to support their contentions. Defendant then address other possible points that Plaintiff may have intended to raise, but ultimately admit that they "are not sure what Plaintiff is asking for" because "[t]he remainder of the motion for sanctions is incoherent."  (ECF No. 81, at PAGEID # 755.)

This Court agrees with Defendants that the motion for sanctions fails to present any basis for sanctions for the reasons that Defendants have presented in their memorandum in opposition. Additionally, that portion of Plaintiff's motion related to summary judgment is an impermissible end run around the briefing limitations that the Local Civil Rules impose on motions practice. No plaintiff can obtain additional summary judgment briefing extrinsic to a motion, supporting memorandum, and reply memorandum without leave of this Court.  *See* S. D. Ohio Civ. R. 7.2(a).

The Court **DENIES** the motion for sanctions.  (ECF No. 80.)

### IV.  Motions for summary judgment

#### A.  Standard involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.

*See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Plaintiff's motion**

On February 4, 2013, Plaintiff filed a motion for summary judgment. (ECF No. 63.) Plaintiff erroneously states that the motion is based on Federal Rule of Civil Procedure 57, which is concerned with declaratory judgments, and Local Civil Rule 55.1(b), which is concerned with show cause orders for failure to pursue a default judgment. Regardless of the flawed reference to inapplicable rules, the actual problems with Plaintiff's motion are at least twofold.

First, Plaintiff filed a memorandum in support of his motion on February 14, 2013. (ECF No. 65.) This filing violated the Local Civil Rule requirement that a memorandum in support must accompany its motion. *See* S. D. Ohio Civ. R. 7.2(a)(1). By filing his memorandum ten days after filing his motion–and without having obtained leave of this Court to do so–Plaintiff

has improperly presented this Court with an untimely memorandum in support that the Court will not consider.

Second, as Defendants correctly state in their memorandum in opposition, Plaintiff "has not satisfied his initial burden pursuant to Fed. R. Civ. P. 56 to inform the court of the basis for his motion nor has he identified portions of the record that demonstrate the absence of a genuine dispute over material facts." (ECF No. 68, at PAGEID # 240.)  Although cognizant of Plaintiff's *pro se* status and therefore affording Plaintiff's filing the most charitable constructions possible, this Court must agree with Defendants.  At best, Plaintiff's motion hints at legal theories based on unauthenticated exhibits, but it does not present cohesive arguments tied to admissible Federal Rule of Civil Procedure 56 evidence to obtain the summary judgment requested.  This flaw foils Plaintiff's pursuit of summary judgment because, as the Court has previously noted, "[t]his Court is in the business of resolving the legal arguments presented to it, not in creating a party's inferred argument for him and then passing judgment on it." *Lyon v. Yellow Transp., Inc.*, No. 2:08-cv-464, 2009 WL 1604807, at *15 (S.D. Ohio June 8, 2009). *See also Versatile Helicopters v. City of Columbus*, 879 F. Supp. 2d 775, 782 (S.D. Ohio 2012).

The Court **DENIES** Plaintiff's motion for summary judgment.  (ECF No. 63.)

**C.  Defendants' motion**

Defendants Havar, Inc., Debbie Schmieding, Barbara Mugrage, Sarah Stoneking, Amanda Metts, and Lindsay Adams have filed a joint motion for summary judgment.  (ECF No. 70.)  This motion presents two threshold issues that require discussion.  First is the issue of whether all of the movants are actually defendants in this litigation or whether the sole named defendant is Havar, Inc.

The individuals identified above argue that they are not defendants in this litigation because Plaintiff has failed to serve them, they have never waived service or authorized anyone to accept service on their behalf, and they have repeatedly raised the service issue in responding to the various complaints filed since the inception of this case.  They correctly note that Plaintiff has listed his own name and Vincent, Ohio address on summons forms for Metts and Stoneking, as opposed to utilizing their respective addresses.  (ECF No. 3, at PAGEID # 6, 11.)  Plaintiff then used an Athens, Ohio address on summons forms for Stoneking, Mugrage, Schmieding, and Adams–the same address, and not an address at which any of these individuals live.  (*Id.* at PAGEID # 7-10.)  Some of these individuals have submitted affidavits in support of their lack of service argument.  (ECF Nos. 70-1 ¶ 6, 70-2 ¶ 15, 70-3 ¶ 17.)  This lack of proper service of process warrants the dismissal of any claims against Metts, Stoneking, Mugrage, Schmieding, and Adams.  *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624-25 (6th Cir. 2004).

Moreover, this Court recognizes that Plaintiff has failed to name Metts, Stoneking, Mugrage, Schmieding, and Adams as defendants in the operative amended complaint.  Although the caption of the December 11, 2012 amended complaint indicates multiple defendants, neither the caption nor the body of that pleading name these individuals as defendants.  (ECF No. 59.)  A simple "et al." is insufficient.  Plaintiff apparently thinks that he has named multiple defendants–his own motion for summary judgment seeks judgment against "the defendants"–but the lack of specificity in his pleading is significant.  (ECF No. 63, at PAGEID # 222.)  This Court cannot say that the December 11, 2012 amended complaint even asserts claims against Metts, Stoneking, Mugrage, Schmieding, and Adams.  Thus, the only defendant involved in this

litigation is Havar, Inc.

The second threshold issue necessitating mention is what claims are involved in the motion for summary judgment.  As noted, the operative amended complaint asserts twelve counts.  Havar, Inc. points to an issue with two of the counts.  Count Two purports to present a claim for "vicarious liability," while Count Nine purports to present a claim for "failure to act." (ECF No. 59, at PAGEID # 2, 4.)  Havar, Inc. offers in its motion that because neither count asserts claims recognized under applicable law, it address the allegations of these counts within the context of other counts that do present relevant claims.  This is a logical approach.

Also involved in ascertaining what claims are at issue is Plaintiff's unspecific pleading. In Count Eight, Plaintiff asserts a sexual harassment claim and explicitly cites Title VII.  He describes the claim as "Hostile Environment harassment: pervasive unwelcome sexual conduct ridicule unreasonably interferes with an individual's job performance or creates an intimidating, hostile, or offensive working environment, even if no tangible or economic consequences result." (ECF No. 59, at PAGEID # 206.)  This unquestionably presents a Title VII sexual harassment/hostile work environment claim.

Havar, Inc. suggests that it may be questionable, however, whether Plaintiff intended Count Eight to include a sexual harassment claim under Ohio law.  Correctly noting that the amended complaint makes no reference to Ohio law, Havar, Inc. suggests that if the Court construes the pleading to present an analogous Ohio claim, Havar, Inc. should prevail on such a claim because the federal and state analyses are the same.

The is no basis for concluding that Plaintiff has asserted the corresponding state law harassment  claim.  Plaintiff fails to direct this Court explicitly or by implication to Ohio Revised

Code § 4112.02, which would be the applicable state law in regard to his sexual harassment allegations. But Plaintiff's reference to Ohio Revised Code § 2913.47 in Count Five of the operative amended complaint demonstrates that he is fully capable of relying on and pleading a state statute. The only logical inference is that Plaintiff has not asserted a sexual harassment claim under Ohio law. The Court therefore recognizes that Count Eight presents only a Title VII claim.

Perhaps a more complicated inquiry exists in regard to Count Three. In that count, Plaintiff asserts a retaliation claim. Presented without correcting or noting any errors, Count Three reads as follows:

> 1. All of the laws that are enforced make it illegal to fire, demote, harass, or otherwise "retaliate" against people applicants or employees because they filed a charge of discrimination because they complained to their employer o other covered entity about discrimination on the job, or because they participated in an employment discrimination proceeding (such as an investigation or lawsuit).
>
> 1. Wanting an EEOC investigation.
>
> 2. Filling out an insurance fraud report over the jumping on the car.
>
> 3. Wanting to fill out a workers comp clam over a hit in the groin.
>
> 4. Getting a lawyer to write to Debbie Schmieding.
>
> 5. Talking about the lawsuit on facebook, which led to a libel tort.

(ECF No. 59, at PAGEID # 204-05.) The question is whether this presents a federal retaliation claim, a state law retaliation claim, or both. Giving Plaintiff the benefit of the doubt and reading Count Eight and its express reliance on Title VII as informing Count Three, the Court will accept that Plaintiff has asserted a federal retaliation claim.

Even if this Court is mistaken as to the scope of Counts Three and Eight, the Court notes

11

that such error cannot be said to prejudice Plaintiff.  This Court's election not to address any state law claims following the failure of the federal claims discussed below means that it does not matter whether Plaintiff intended to assert corresponding state law harassment and retaliation claims.

This Court shall proceed to address the federal claims, starting with Count Eight first. Title VII provides that "[i]t shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . or to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . ."  42 U.S.C. §§ 2000e-2(a)(1)-(a)(2).

To prove discrimination in the form of a hostile work environment, Plaintiff must show that

> (1) [he] was a member of a protected group, (2) [he] was subjected to unwelcome harassment, (3) the harassment was based upon the employee's . . . gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventive actions. *Williams v. Gen. Motors Corp.,* 187 F.3d 553, 560-61 (6th Cir. 1999) (discussing the requirements for proving a hostile work environment claim based upon gender); *Moore v. KUKA Welding Sys. & Robot. Corp.,* 171 F.3d 1073, 1078-79 (6th Cir. 1999) (setting forth the elements of a prima facie case for a claim of a hostile work environment based upon race).

*Howard v. Bd. of Educ. of Memphis City Sch.*, 70 F. App'x 272, 281 (6th Cir. 2003) (citing *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 604-05 (6th Cir. 2002)).  The Sixth Circuit has further explained that a Title VII plaintiff must show that

> the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment

> and create an abusive working environment . . . .  Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993)) (internal quotes and citations omitted); *see also Howard*, 70 F. App'x at 282.

The touchstone of a hostile work environment claim is thus proof that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).  There is both a subjective and an objective prong to this standard.  In other words, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997) (citing *Harris*, 510 U.S. at 21-22).  Consequently, the question before the Court is whether a reasonable person would have found Plaintiff's work environment to be hostile or abusive.

In answering this question, the Court must consider various factors including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  Although the work environment as a whole must be viewed by the Court, including all alleged acts of harassment or abuse, if such

13

acts are irregular and sporadic rather than continuous and frequent, it is much more difficult to prove a hostile work environment claim. *See id.* This is because "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor Sav. Bank, FSB*, 477 U.S. at 67. For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted).

Havar, Inc. argues that the conduct about which Plaintiff complains is simply not sexual harassment. The employer notes that although Plaintiff complains that coworkers spread rumors about him, Plaintiff refused to tell his supervisor the content of these rumors and now asserts that he cannot recollect the substance of these rumors. Moreover, Plaintiff found the rumors humorous while he was employed. Plaintiff simply did not report other incidents to his employer, and even regarded some of those incidents as not offensive. Havar, Inc. also notes that Plaintiff complains that a coworker would not talk to him, that a coworker reported that Plaintiff used the shower while at work, that coworkers reported that Plaintiff jumped on another employee's car, and that a coworker taught a developmentally disabled adolescent to say "Harry dirty" in sign language. Another coworker allegedly posted disparaging remarks on Facebook about Plaintiff's sister.

None of this appears to have anything to do with Plaintiff's gender. Plaintiff has failed to file a memorandum in opposition to Havar, Inc.'s motion for summary judgment, which means that Plaintiff has failed to direct this Court to any evidence connecting the foregoing conduct to his gender. Necessarily construing the evidence in a light most favorable to Plaintiff, the Court

concludes that the conduct complained of does not rise to the level of harassing or discriminatory conduct presenting a hostile work environment.  The distinct incidents about which Plaintiff complains are often so discrete and are so lacking in severity that they could hardly be regarded under the totality of the circumstances as permeating the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to affect Plaintiff as he claims to have been affected.

This is not to say that Plaintiff was without any amount of cause to find the manner in which he was at times treated or the manner in which other employees interacted with him upsetting.  But upsetting does not always equal unlawful.  Plaintiff must recognize that Title VII does not exist to ensure that everyone who works together enjoys one another's company or personality.  Title VII is simply not a general civility code.  *See Faragher*, 524 U.S. at 788 ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' ").  *See also Black*, 104 F.3d at 826 ("Title VII was 'not designed to purge the workplace of vulgarity' " (quoting *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir. 1995))).  Thus, the relatively meager instances of discourtesy or rudeness involved here cannot be confused with serious harassment or discrimination premised upon impermissible grounds such as gender.  *See Faragher*, 524 U.S. at 787.  While not excusing the treatment or behavior reflected in the evidence, the Court must nonetheless recognize that the instances of asserted impropriety do not amount to discriminatory changes in the terms and conditions of Plaintiff's employment.  *See id.* at 788.  There is simply no basis for linking any of the treatment about which Plaintiff complains to gender, and none of this conduct was severe and pervasive.

Undisputed evidence indicates that it was at times Plaintiff who was engaging in poor behavior related to gender, such as when he grabbed a female coworker's breast while on top of her; when he stood up, he apparently had an erection. Plaintiff claims that this coworker struck him the groin while he was "playing" with her. Plaintiff did not report this incident to Havar. Inc. until he was being suspended for his own poor conduct. Whenever Plaintiff actually divulged the details of his complaints to his employer during the course of his employment, Havar, Inc. took corrective action that ended the behavior at issue–just as it did in terminating Plaintiff's employment due to his actions.

This last point is notable because even if Plaintiff had presented a prima *facie case* of harassment, Havar, Inc. cut back on his hours, suspended him, and terminated his employment for legitimate, nondiscriminatory reasons. Schmieding states in her affidavit that the reduction of hours that Plaintiff experienced was part of a reduction in hours for *all* Resident Assistants employed at Tupper House that was attributable to a determination that the residents of that facility needed less supervision than they had previously required. This is hardly an adverse action specific to Plaintiff or even employees of his gender. Plaintiff's inexcusable and often inexplicable conduct routinely violated his employer's anti-harassment policies and code of conduct. Havar, Inc. has presented affidavit evidence from supervisors indicating that this is why the employer suspended and then terminated Plaintiff. Plaintiff has presented this Court with no evidence suggesting even a genuine issue of fact on any of Havar, Inc.'s proffered reasons. Havar, Inc. is thus entitled to summary judgment on Count Nine.

This leaves one other federal claim for discussion. Given the prior determination that the Count Three retaliation claim falls under Title VII, the Court notes that the relevant statute

provides that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3(a). As the employee, Plaintiff has the burden of proving a *prima facie* case demonstrating that Havar, Inc. as the employer unlawfully retaliated against him.

To establish a *prima facie* case of unlawful retaliation under Title VII, Plaintiff must prove by a preponderance of evidence that: (1) he engaged in a protected activity; (2) Havar, Inc. knew that he engaged in this protected activity; (3) Havar, Inc. subsequently took an employment action adverse to Plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists. *See Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (citing *Strouss*, 250 F.3d at 342 (6th Cir. 2001); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). The Sixth Circuit has held after a plaintiff has proven the existence of a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Abbott,* 348 F.3d at 542 (citing *Nguyen*, 229 F.3d at 562). If the defendant can meet this burden, then the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason was mere pretext. *Abbott*, 348 F.3d at 542 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). If the plaintiff demonstrates that the defendant's proffered reasons were pretextual, then the fact finder may infer unlawful retaliation. *Abbott*, 348 F.3d at 542.

Plaintiff has again failed to evade summary judgment. This Court agrees with Havar,

17

Inc.'s argument that the majority of Plaintiff's complaints could not have caused his reduction in hours, suspension, and termination because Havar. Inc. only learned about this conduct *after* these employment actions.  Subsequent knowledge cannot of course provide the causal connection for prior action.  Plaintiff's failure to report incidents upon which he now relies precludes crediting Havar, Inc. with having known about the alleged conduct.  Additionally, as discussed above, Havar, Inc. had legitimate reasons for taking the actions against Plaintiff it took.  Plaintiff has failed to call into question those reasons.

Plaintiff has simply failed to present this Court with any argument, much less with any supporting evidence, as to how Havar, Inc. engaged in retaliation.  Havar. Inc. is therefore also entitled to summary judgment on Count Three.

In light of the failure of Plaintiff's federal claims, this Court presumptively should not address his state law claims.  *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996))).  Plaintiff has failed to assert any justification or alternative basis for exercising jurisdiction over his remaining claims should the Court grant summary judgment against him on his federal claims.  Therefore, while expressing no opinion on the merits of the state law claims, the Court dismisses these claims without prejudice.  *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Brandenburg v.*

*Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").

The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's federal claims and **DISMISSES** Plaintiff's state law claims **WITHOUT PREJUDICE**. (ECF No. 70.)

## V. Plaintiff's miscellaneous motions

Plaintiff has filed a number of documents that he labels motions *in limine*. (ECF No. 74, 86, 88, 91, 92, 93.) He has also filed a document titled "GAG ORDER" and a document titled "SLAPP," which, construed most broadly in Plaintiff's favor, might be respectively described as a motion requesting a gag order from this Court and a motion requesting a ruling related to California law and how Plaintiff perceives it applies in this litigation. (ECF No. 83, 84.) Given this Court's disposition of the federal and state law claims discussed herein, all of these remaining motions are moot.

The Court therefore **DENIES** the motions as **MOOT**. (ECF No. 74, 83, 84, 86, 88, 91, 92, 93.)

VI. Conclusion

This Court **DENIES** Defendants' motion to strike (ECF No. 57), Plaintiff's motion for summary judgment (ECF No. 63), and Plaintiff's motion for sanctions (ECF No. 80). The Court **GRANTS** Defendants' motion for summary judgment (ECF No. 70) in regard to Plaintiff's federal claims, but declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which the Court **DISMISSES WITHOUT PREJUDICE**. This Court **DENIES** the remaining motions as **MOOT**. (ECF Nos. 74, 83, 84, 86, 88, 91, 92, 93.) The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

      /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE